UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TERESA BROWN SWINGLE,

      Plaintiff,

v.                                                          CASE NO. 6:20-cv-365-Orl-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her application for a period of disability and disability insurance benefits ("DIB").  Following an administrative hearing held on September 24, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from May 29, 2015, the alleged disability onset date, through October 9, 2019, the date of the ALJ's decision.[2]  (Tr. 11-18, 23-46, 147.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 16.)

[2] Plaintiff had to establish disability on or before December 31, 2020, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 11.)

## I.   Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

### A.   Issue on Appeal

Plaintiff argues that the ALJ erred by failing to apply the correct legal standards and by making findings not supported by substantial evidence in

rejecting the opinion of William Erhard Eyring, III, Psy.D., a one-time examining consultant.  (Doc. 18 at 7, 9.)  Plaintiff points out that the ALJ erroneously stated that only "mild type limitations" were included in Dr. Eyring's opinion while Dr. Eyring specifically opined that Plaintiff was moderately impaired in her ability to respond to day-to-day stress.  (*Id.* at 8.)  Plaintiff argues that the ALJ erred in failing to account for this moderate limitation in the residual functional capacity ("RFC") assessment.  (*Id.* (citing SSR 85-15).)  Plaintiff adds that the ALJ failed to cite to any evidence in support of his conclusory finding that Dr. Eyring's opinion was not supported by and consistent with the generally normal mental status exam findings.  (*Id.* at 9.)

Defendant responds that the ALJ properly evaluated Dr. Eyring's opinion under the revised rules and regulations that apply to claims, such as Plaintiff's application, filed on or after March 27, 2017 and found the doctor's opinion not fully persuasive.  (Doc. 19.)  Defendant argues that in light of the generally normal mental status exam findings reported by Dr. Eyring and the other medical sources, substantial evidence supports the ALJ's evaluation of Dr. Eyring's opinion.  (*Id.*)

### B.    Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinions, the rules in 20 C.F.R. § 404.1520c apply to claims filed on or

after March 27, 2017.[3]  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the case record, 20 C.F.R. § 404.1520c(b), but need not articulate how evidence from non-medical sources has been considered, 20 C.F.R. § 404.1520c(d).

"When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. § 404.1520c(c)(1) through (c)(5), as appropriate.  20 C.F.R. § 404.1520c(a), (b)(1).  The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually."  20 C.F.R. § 404.1520c(b)(1).

When evaluating the persuasiveness of medical opinions, the most

---

[3] The rules in 20 C.F.R. § 404.1527 apply to claims filed before March 27, 2017.

important factors are supportability[4] and consistency.[5]  20 C.F.R. § 404.1520c(a), (b)(2).  Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c).  20 C.F.R. § 404.1520c(b)(2).  When "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will articulate how he/she considered the other most persuasive factors listed in 20 C.F.R. § 404.1520c(c)(3) through (c)(5), which include a medical source's relationship with the claimant,[6] specialization, and other factors.[7]  20 C.F.R. § 404.1520c(b)(3).

---

[4] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions  . . . will be."  20 C.F.R. § 404.1520c(c)(1).

[5] "The more consistent a medical opinion(s)  . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)  . . . will be."  20 C.F.R. § 404.1520c(c)(2).

[6] The relationship with the claimant factor combines consideration of the following issues: the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship.  20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[7] The other factors may include: the medical source's familiarity with the other evidence in the claim; the medical source's understanding of the disability program's policies and evidentiary requirements; and the availability of new evidence that may render a previously issued medical opinion more or less persuasive.  20 C.F.R. § 404.1520c(c)(5).

### C.    Relevant Evidence of Record

### 1.    Dr. Eyring's Consultative Evaluation

On September 11, 2018, Plaintiff presented to Dr. Eyring for a General Clinical Evaluation with Mental Status at the request of the Office of Disability Determinations.  (Tr. 655.)  Plaintiff alleged disability due to "fibromyalgia, mental and heart problems."  (*Id.*)  Plaintiff reported 100% service-connected[8] disability and a history of anxiety with "a racing heart and inability to focus."  (*Id.*)  Dr. Eyring noted the following psychiatric history:

> For the past ten years, Mrs. Swingle has been prescribed Lexapro for anxiety (as needed; this is prescribed by a VA psychiatrist—she avoids taking this since being prescribed Flexeril).  She also takes a dietary supplement (5-HTP) for mood stabilization.  She has been prescribed psychotropic medications since 1992 (including Buspar and Effexor).  She has received counseling for the past 18 months (2-4 times monthly; related to conflict with her daughter).  She denied a history of psychiatric hospitalizations.

(Tr. 656.)

Plaintiff's examination was generally normal, except "[h]er thought process was tangential and she required some redirection to remain on task," "[h]er affect was blunted," and "[h]er social judgment was fair to good."  (*Id.*)  Dr. Eyring

---

[8] Records from the Department of Veterans Affairs ("VA") indicate that Plaintiff was honorably discharged from the Air Force on September 7, 1993 and was awarded a monthly benefit for her service-connected disabilities, including fibromyalgia, allergic or vasomotor rhinitis, neurogenic bladder, removal of uterus and ovaries, and neurosis/general anxiety disorder.  (Tr. 261, 632-33.)  Plaintiff was also found disabled for her position as a program analyst by the Office of Personnel Management "due to fibromyalgia, chronic pain, and numbness and tingling from head to toe on the right side of the body," even though Plaintiff also claimed disability due to anxiety disorder, among other conditions.  (Tr. 516.)

diagnosed somatic symptom disorder with predominant pain and generalized

anxiety disorder.  (Tr. 657.)  He noted:

> Mrs. Swingle reported that she has a driver's license but avoids
> driving due to experiencing anxiety in heavy traffic.  She maintains
> close friendships and enjoys bowling and dining out.  At home, she
> "helps" with cooking and laundry (she does not sweep or vacuum).
> She is reportedly self-sufficient with regard to her personal hygiene.
> She denied recent insomnia.
>
> . . .
> Mrs. Swingle reported that her ability to work has been impaired by
> daily anxiety and fibromyalgia pain since 1992 (she retired in 2015).
> She reported recent financial and family stress.

(Tr. 656.)

Dr. Eyring's prognosis was "fair."  (Tr. 657.)  He recommended that Plaintiff

continue with pain management, psychotropic medication, and individual

counseling to improve her mood.  (*Id.*)  His Medical Source Statement ("MSS")

read as follows:

> The claimant's ability to understand and remember simple
> instructions was intact.  Her ability to attend and follow through on
> complex tasks is judged to be mildly impaired.  Her ability to make
> judgments appears mildly impaired, interact effectively with others
> appears mildly impaired, and respond to day-to-day stress appears
> moderately impaired.

(*Id.*)

## 2.    State Agency Non-Examining Consultants

On September 26, 2018, after reviewing the records available as of that

date (including Dr. Eyring's evaluation), Jermaine Robertson, Ph.D. completed a

Psychiatric Review Technique ("PRT"), opining that Plaintiff's mental impairments

were non-severe and she was "mentally capable of engaging in work-related activity." (Tr. 53-54.) Dr. Robertson opined that Plaintiff had mild limitations in interacting with others and in concentration, persistence, or pace, and no limitations in understanding, remembering, or applying information, and in adapting or managing oneself. (Tr. 53.)

On December 5, 2018, after reviewing the records available as of that date, Lawrence Annis, Ph.D. completed a PRT, opining that Plaintiff's mental condition was non-severe. (Tr. 68-69.) He stated: "Account of ADLs [i.e. activities of daily living] and objective evidence indicate [a] mild overall functional impairment due to [the claimant's] mental condition. [Claimant] presents the mental capacity to perform simple and complex occupational tasks within her physical ability." (Tr. 69.) Dr. Annis opined that Plaintiff had mild limitations in interacting with others and in concentration, persistence, or pace, and no limitations in understanding, remembering, or applying information, and in adapting or managing oneself. (*Id.*)

### D.    The ALJ's Decision

At step two of the sequential evaluation process,[9] the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, osteopenia, fibromyalgia, mitral valve prolapse, and intestitial lung

---

[9] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

disease.  (Tr. 13.)  The ALJ determined that Plaintiff's generalized anxiety disorder and adjustment disorder, among others, were non-severe impairments, because:

> Overall, the claimant's impairments . . . were mild in nature and appeared to be controlled with medical management and monitoring . . . .  In addition, the State agency psychological consultants completed psychiatric review techniques and opined that the claimant's mental impairments are not severe . . . .  The opinion of the doctors are [sic] supported by a review of the medical evidence of record and consistent with the claimant's conservative medical management.  In addition, another consultative examiner opined similar findings indicating mild type limitations upon a psychological evaluation (Ex. 5F).  The opinion is considered not fully persuasive, as no specific work limits were given[,] and it was not supported by and consistent with the generally normal mental status exam findings.  . . .

> The claimant's medically determinable mental impairments, as mentioned, such as generalized anxiety disorder and adjustment disorder considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non[-]severe.

(Tr. 13-14.)

Also as part of step two, the ALJ addressed the four broad areas of mental functioning, known as the "paragraph B" criteria, as follows:

> The first functional area is understanding, remembering, or applying information.  In this area, the claimant has no limitation.  The claimant was noted to have issues with memory, understanding and following instructions.  However, the claimant was noted to have the ability to perform numerous activities of daily living.  Furthermore, the claimant was able to adequately report mental health symptoms to medical providers in the medical evidence of record . . . .

> The next functional area is interacting with others.  In this area, the claimant has a mild limitation.  The claimant reported issues with getting along with others due to ongoing mental health symptoms.

However, the claimant was noted to live with family, and spend time with others . . . .

The third functional area is concentrating, persisting, or maintaining pace.  In this area, the claimant has a mild limitation.  The claimant reported issues with memory, completing tasks, concentration, understanding, and following instructions.  However, the claimant was able to perform numerous activities of daily living that require a degree of concentration, persistence, and pace . . . .

The fourth functional area is adapting or managing oneself.  In this area, the claimant has no limitation.  The claimant lives with family, takes care of pets, attends to personal care needs, prepares meals, performs household duties, drives a car, shops in stores, plays games, and spends time with others . . . .

(Tr. 14.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 15.)  Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work, except she could frequently balance; occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds; and have occasional exposure to unprotected heights, moving mechanical parts, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration.  (*Id.*)  In making these findings, the ALJ discussed Plaintiff's complaints, the medical evidence, and the medical opinions regarding Plaintiff's physical impairments/limitations.  (Tr. 16-18.)  In support of his RFC assessment, the ALJ stated:

The undersigned has reviewed and analyzed all evidence of record, including medical records, whether or not they have been specifically discussed in the decision.  In sum, the above [RFC] assessment is

supported by the objective medical evidence contained in the record.
Treatment notes in the record do not sustain the claimant's
allegations of a disabling impairment.  The persuasiveness of the
claimant's allegations is weakened by inconsistencies between her
allegations and the medical evidence of record.  The undersigned
finds that the claimant experienced some limitations but only to the
extent described in the [RFC] above.

(Tr. 18.)

Then, at step four, the ALJ determined that Plaintiff was capable of
performing her past relevant work of both a payroll clerk and a program analyst,
as generally performed.  (*Id.*)  Thus, the ALJ concluded that Plaintiff was not
disabled from May 29, 2015 through October 9, 2019.  (*Id.*)

## E.   Analysis

The Court finds that the ALJ's decision is based on correct legal standards
and is supported by substantial evidence in the record.  The ALJ properly
addressed the supportability and consistency factors set forth in 20 C.F.R. §§
404.1520c(c)(1) & (c)(2) in regard to Dr. Eyring's opinion.  (Tr. 14.)  Also, the
ALJ's finding that Dr. Eyring's opinion was "not fully persuasive," because "no
specific work limits were given and it was not supported by and consistent with
the generally normal mental status exam findings", is supported by substantial
evidence in the record.

First, the ALJ properly observed that Dr. Eyring did not assess any specific
work limits.[10]  (Tr. 14, 655-57.)  The ALJ also correctly noted that Dr. Eyring's

_____

[10] Dr. Eyring opined that Plaintiff was mildly impaired in her ability to attend to
and follow through on complex tasks, to make judgments, and to interact effectively with

findings were similar to those of the State agency psychological consultants, Dr.

Robertson and Dr. Annis, in that he "indicat[ed] mild[-]type limitations."  (Tr. 14,

657 (indicating a mild limitation in the ability to attend to and follow through on

complex tasks, to make judgments, and to interact effectively with others).)

Although Dr. Eyring also indicated that Plaintiff's ability to "respond to day-to-day

stress appear[ed] moderately impaired" (Tr. 657), the ALJ found Dr. Eyring's

opinion "not supported by and consistent with the generally normal mental status

exam findings" (Tr. 14).  The ALJ's finding as to the supportability and

consistency of Dr. Eyring's opinion is supported by substantial evidence in the

record.  (*See, e.g.*, Tr 544-50 (noting, as of June 21, 2017, that Plaintiff's mood

was normal, her screen for depression was negative, and she stopped Lexapro,

which was prescribed for adjustment disorder); Tr. 538 & 716 (noting mild

depression and mild anxiety based on screening performed on February 5, 2018

and also noting that Plaintiff "ask[ed] for ongoing therapy to help with her

adjusting to all of the changes in her life as well as for a refill of escitalopram");

Tr. 708 (noting normal mood and affect as of June 29, 2018); Tr. 670-73 (noting

mild depression and mild anxiety based on screening performed on November

---

others, and moderately impaired in her ability to respond to day-to-day stress.  (Tr. 657.)
If the ALJ had found some or all of these impairments supported by and consistent with
the record, the ALJ would have assessed specific work-related limitations to account for
the impairments.  However, as stated *infra*, the ALJ did not need to take into account
Dr. Eyring's assessed impairments when determining the RFC, because Dr. Eyring's
opinion was not supported by substantial evidence in the record.  *Cf.* SSR 85-15 ("Any
impairment-related *limitations* created by an individual's response to demands of work
[i.e., stress] . . . must be reflected in the RFC assessment.") (emphasis added).

21, 2018); Tr. 761-68 (noting minimal depression and mild anxiety as of February 19, 2019, and reporting that the medical marijuana was helping a lot with the anxiety and was helping Plaintiff "focus on one thing at a time"); Tr. 729 (noting normal mental examination findings as of June 6, 2019); Tr. 731 (noting normal mental examination findings as of June 13, 2019); Tr. 755 (noting normal mood and affect as of June 27, 2019); *but see* Tr. 646-51 (noting, as of September 8, 2018, that Plaintiff "exhibited mental abnormalities, angry demeanor, [was] anxious, [and] her responses had a 'bitter' tone to them," and opining that Plaintiff's mental problems "seem[ed] to be the vast majority of her problems" and that she needed a psychological evaluation[11]); Tr. 773-76 (noting anxious and dysphoric mood, blunted affect, moderate depression, and mild anxiety as of December 17, 2018).)  Because the ALJ's evaluation of Dr. Eyring's opinion was based on correct legal standards and was supported by substantial evidence, the ALJ did not err in failing to account for Dr. Eyring's assessed impairments in the RFC assessment.

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are

---

[11] This examination by Dr. Donna Lester took place two days before Dr. Eyring's evaluation.

based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on November 16, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record